[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was commenced by the 57 year old plaintiff husband against the 53 year old defendant wife seeking a dissolution of their marriage that took place on November 30, 1957 at Waterbury, Connecticut. Both parties have been residents of the state of Connecticut for many years prior to the commencement of this action and the court has jurisdiction based on their continuous residence. Three children were born of the union, all of whom have attained majority. The state of Connecticut has no interest in this case never having advanced any assistance to either party or to any of their children.
The parties jointly own a home located at 43 Idlewood Road in the Town of Wolcott, Connecticut. At the time of the marriage, the plaintiff owned the land upon which the home was built after the marriage. The plaintiff now values the property at $136,000 while the defendant values the property at $138,000. The court finds the fair market value of the real estate to be $137,000.
During the early years of the marriage, the plaintiff, who was a tool maker, worked for various employers. He also had a drinking problem which he confronted in December, 1967 by joining AA and has been free of alcoholic beverage since January, 1968. Much testimony was given regarding this condition but the court fails to see how the unfortunate affliction that the plaintiff experienced twenty-five years ago bears upon the ultimate breakdown of this marriage. In September, 1979 the plaintiff began his own business while still employed full time at his then employer. He continued to work for this employer until 1983 when he was fired as a result of the employer's discovering his business that he was conducting nights and weekends. He has operated the business full time as a one-man operation, hiring part time employment on a casual basis from time to time. His business consists of servicing four customers primarily and the largest customer furnishes two-thirds of his entire business. He must compete on pricing to keep the customers for he testified that is how he obtained these customers by competitively bidding under the other contractors in the area. His accountant, who was called as an expert witness by the plaintiff, testified that the CT Page 7210 top value of the business as a going concern is $100,000. His cost for the machinery in the business was $65,000. He is able to draw from the business approximately $45,000 annual income before taxes. For 1991 he reported an additional $6,634 income from interest from the various bank accounts that the parties hold, mostly in joint names. (Plaintiff's Exhibit A). Each party filed a separate 1040 Federal Income Tax Return for 1991. The business demands his entire attention and he has been working and continues to work from 50-60 hours weekly in order to meet the customers' requirements. The plaintiff draws $350 cash weekly from the business and has been giving the defendant $100 each week from that draw. About six years ago the plaintiff sustained an initial silent heart attack.
The parties jointly own a parcel of real estate located at 43 Idlewood Road, Wolcott, Connecticut which has an equity loan on it in the amount of $25,000 which the plaintiff has used from time to time for the business and which was also used to purchase a 1988 Lincoln automobile that is registered to the plaintiff.
The defendant has Lupus which was diagnosed in 1980 and has arthritis. Since February, 1991, she has been doing computer work and bookkeeping for her brother. Prior to that, from 1986 through 1989 the defendant developed a bakery business known as Bread Basket Bakery which was for the employment of 20 retarded adults and the business was a success and from that business the defendant was able to draw an initial salary in 1986 of $14,800 and the salary increased to $30,000 in 1989 before she stopped work based on her explanation that she was working seven days every week and the stress became too much in light of her physical conditions. Their son William, who was born in 1961, suffers from cerebral palsy and needed the defendant's complete attention for several years, particularly from 1973 through 1975 while he was being exercised and patterned. William has now been placed in a group home. The defendant engaged in part time employment while their son William was at home. The defendant was able to return to full time employment in 1982 and continued with full time employment until she stopped working for the bakery in 1989.
The defendant stated that she saw the marriage breaking down totally approximately seven and one-half years ago. The plaintiff claimed that the marriage broke down by 1980. The parties separated on November 1, 1990 when the defendant went to Florida with her father. She has never returned to the family home and has been living since July 1, 1991 in a cottage by Cedar Lake. The plaintiff has since become interested in another woman but the court fails to see how this contributed to the breakdown of the marriage that was already dysfunctional for several years, Venuti v. Venuti, 185 Conn. 156. CT Page 7211
The plaintiff called Paul Lockwood, C.P.A. as his expert to testify regarding the value of the plaintiff's business. Mr. Lockwood has been the accountant for the business and for the parties for several years. He gave his opinion that the business was worth $100,000 as it stands today.
The defendant had an appraisal done of the machinery and equipment owned by the business and called as her witness Leslie A. Beveridge, A.S.A. who rendered a written report (Defendant's Exhibit #2) and who testified regarding the contents of the report which stated that the tangible assets have a fair market value-installed of $62,915. The defendant then called Joseph C. Bissonnette, a public accountant and certified tax professional who also rendered a written report (Defendant's Exhibit #3) and who testified regarding his opinion. He adopted the appraisal of Mr. Beveridge in making his calculations. Mr. Bissonnette employed a method known as multiplier of excess earnings to arrive at an estimated market value for the business of $172,162. He employed a second method known as discounted value of cash flow to arrive at an estimated market value of $178,428. He rounded up these figures and testified that in his opinion the reasonable estimate of the fair market value of the business of the plaintiff was $180,000. The Bissonnette appraisal acknowledges that the business has a "small customer list" but does not acknowledge that one of the four or five customers furnishes over 50% of the total business. Therefore, the court questions the use of a multiplier of 2.5 in applying the multiplier to excess earnings. Because of the lack of broad customer base and the fact that the business keeps the largest customer by virtue of price cutting, the court finds that a smaller multiplier of 1.5 is more appropriate. The court concludes that the value of the business is $128,500, Turgeon v. Turgeon, 190 Conn. 269.
The parties also have several bank accounts as follows:
American Bank Acct 87200238 CD $60,217.59 American Bank Acct 87200476 CD $ 4,190.13 American Bank Acct 10016091 CD $ 746.26 Bank of Boston Acct 9300884279 CD $ 3,041.15 Bank of Boston Acct 9300705067 CD $17,902.57 ---------- $86,097.70
In addition, the plaintiff has an IRA account in American Bank #8-3100106, $21,950.19. The defendant also has an account in the Bank of Boston #9300196713 CD in the amount of $2,553.25 as well as a checking account in her name alone containing $412.00 as of the date of her financial affidavit. Finally, the defendant holds two CD's in the amount of $10,000 each which are for the benefit of her mother to which the plaintiff has laid no claim. CT Page 7212 The court notes that the plaintiff listed an IRA account for the defendant with $4,354.61 alleged to be deposited in account #8-27200360 but such account is not listed on the defendant's affidavit.
The court, having reviewed the evidence in light of the statutory criteria, enters the following judgment, all the allegations of the complaint having been proven and are found to be true.
1. A decree is entered on the complaint dissolving the marriage of these parties on the ground of irretrievable breakdown. The cross complaint is dismissed as moot.
2. The defendant's maiden name, Veronneau, is restored.
3. The plaintiff shall retain as his sole property the business known as BMC Eyelet Company, 250 Porter street, Watertown, CT.
4. The defendant is awarded the plaintiff's interest in the real estate known as 43 Idlewood Road, Wolcott, Connecticut. The plaintiff is ordered to execute a quit claim deed and in the event such deed is not forthcoming, once this judgment is final, title is ordered passed pursuant to the statute made and provided.
5. The plaintiff is ordered to be solely responsible for the equity line of credit mortgage which currently encumbers the property located at 43 Idlewood Road, Wolcott. He may continue to make payments on such encumbrance for the ensuing six months, but shall arrange for refinancing which will remove such lien from the property on or before January 31, 1993. In the interim, he shall save the defendant harmless and indemnified in the event of any claim made by the holder of the equity line note.
6. The plaintiff shall pay to the defendant as periodic alimony the sum of $150 weekly, first payment due on the first Friday following the filing of the opinion, and shall continue paying said sum until the death of either party or the remarriage of the defendant. This order shall be secured by a wage withholding pursuant to statute. In addition, the court has granted the plaintiff's motion seeking pendente lite alimony and has ordered $100 weekly alimony from January 3, 1992 through July 24, 1992, a total of 30 weeks, a total temporary alimony order of $3,000, all of which the court understands the plaintiff has previously paid.
7. The defendant is awarded the contents of the home located at 43 Idlewood Road, Wolcott, CT. CT Page 7213
8. The parties shall divide equally the CD's on deposit at American Bank in account #87200238, and account #87200476; and the accounts in Bank of Boston #9300884279, and #9300705067.
9. The defendant may retain the American Bank Account #10016091 in the amount of $746.26 dedicated to the benefit of the son.
10. The defendant shall retain the certificate of deposit with Bank of Boston in the amount of $2,553.25 as well as her Bank of Boston checking account.
11. The plaintiff shall retain his IRA account at American Bank as his sole property.
12. The defendant shall retain her IRA account at American Bank as her sole property.
13. The plaintiff shall retain the 1987 Dodge pickup motor vehicle and the 1988 Lincoln Town car automobile as his sole property.
14. The defendant shall retain the 1989 Buick Skylark automobile as her sole property.
15. Each party shall retain any remaining items of personal property not otherwise set out in this memorandum as sole property.
16. The plaintiff shall be solely responsible for the MasterCard account listed on his financial affidavit. The defendant shall be solely responsible for the G. Fox and Fashion Bug accounts listed on her financial affidavit. If the MasterCard account listed on the defendant's affidavit is a second account separate from the plaintiff's, then the defendant shall be responsible for this second card.
17. The plaintiff shall continue to maintain his $10,000 face amount life insurance G. I. policy naming the defendant beneficiary so long as she is entitled to receive alimony from the plaintiff. Upon request, he shall produce periodic proof that such policy remains in force and effect, and not subject to any loan or pledge off sets.
18. The defendant is awarded an allowance to defend in the amount of $4,200 which shall be payable in full on or before August 31, 1992.
Counsel for the plaintiff is directed to prepare the judgment file. CT Page 7214
HARRIGAN, J.